Thank you, Your Honor. I'm going to just sign this plea and I'd like to present Lori Paakula in her opinion. We've, uh, the licensee, um, sir, uh, two minutes will be more than enough time. And we are appealing the dismissal of Ms. Paakula's claim from under the Rehabilitation Act of 1973, and that is the federal counterpart of the Americans with Disabilities Act. The trial court has dismissed the plaintiff's claim on the basis of the exclusivity provision of the Federal Employee Compensation Act. I hereby subpoena. Are you able to hear me, Your Honor? Yes. Ms. Paakula had to work late to observe a flight on July 17, 1993. As a result of this incident, and the subsequent actions of the Postal Service did not safeguard her, she became afflicted with a condition called Post Traumatic Stress Disorder. In 1999, Paakula's PTSD was exacerbated and she was harassed by her supervisor. Both injury claims which occurred on the job have been accepted by the OJCP, the Administrative Agency, charged with the administration of the Federal Employee Compensation Act. They've accepted her claims as work-related injuries. From 1999 to June 2002, the Postal Service accommodated Ms. Paakula's condition by assigning her to work sites away from distresses which caused her to be symptomatic of her condition. In June 2002, the Postal Service transferred Paakula to a work site where she would have contact to the fighters, to the accountants of the 1993 fight. She sought reasonable accommodation as a result of this event. The Postal Service, through its district rehabilitation, reasonable accommodation to be, denied her cause for accommodation on the basis that they felt that Post Traumatic Stress Disorder did not substantially limit Paakula's doing a broad spectrum of jobs. The trial court, when we filed the claim, we filed it under the Rehabilitation Act of 1972. We did not see any claims under the Federal Employee Compensation Act. She no longer had any procedure benefits. We were satisfied with those benefits. What we wanted was a relief. Senator Henderson, from the monitoring of what she was named under FEDA. That's where I have some difficulty with the claim, because the post-traumatic stress syndrome was an injury under the FECA statute. It is work-related. And she was ordered by the board to be accommodated. In other words, it's precisely the same injury, and she got precisely the same relief about which she's now complaining. So why isn't this particular claim preempted? Unlike, for example, your retaliation claim, which I think would not be preempted. Well, it ordered her to be accommodated. As I understand it, the person is trying to decide whether or not she's going to be accommodated. That's the major distinction between the issue. We are not complaining about the injury, but what the Postal Service refused to do that they have been doing for a period of time, 1999 to 2002. As I understand it, the person is trying to decide whether or not she's going to be accommodated. I think it's possible to synthesize the issue of whether FEDA preempted the title subject. Can you hear us, counsel? The Ninth Circuit found that it did not. I don't think you can hear us. They were saying the reasoning would apply in this case. That was the case. Counsel, can you hear the judges? I don't think he can hear us. You can't hear us? I can't hear you now. Oh. Well, Judge Reimer has had some questions he wanted to have answered, and we feel that maybe you haven't heard them. I didn't hear your question. Can I ask one thing? I was under the impression that you sought in the FECA proceeding an order not to be placed in a place where you would be in contact with the folks who caused distress, and that that was ordered. Is that not correct? I would not know. I did not represent Ms. Bock-Bullitt in the FECA matter. I don't know nothing about it. I have very little knowledge of the future case. I think I have some understanding as to its remedies, but I did not represent Ms. Bock-Bullitt before the OACP. Okay. Thank you. But you do know, don't you? You do know what happened there. And what the rulings of the FECA were. Do you not? No, I know that they ordered the claims to be covered, and she decompensated. I do not. I'm not aware of any claims or orders of any kind from the OACP which ordered the Postal Service to accommodate her works on site. Did you write the brief? Did you write the brief for this case? I wrote the brief. My associate wrote the brief. I read it, and I approved of it when it was written. Yes. It's kind of a good thing to look into what the order says too. I do not. Your Honor, do I have any indication that the FEDL, that FECA, or the FEDL Rehabilitation Act really goes along with themselves? This and the primary agency listed in the history of both acts when compared to the other, as well as the clear and distinct relief that is provided. Okay. Would you like to save the rest of your time for rebuttal? Counsel, before you do that, counsel, at page four of your brief, while you're sitting down, could you read that, because it talks about the fact that the claim that she filed was in contact with the stressing individuals. So while you're sitting down, if you could just read that. I'm aware, but, Your Honor, I'm aware that it's part of the OVC process, and it's part of the medical providers with their diagnosis, their prognosis, and their recommendation. I'm aware that that is all that is. No, you put in your brief that as part of the resolution of the OWCP claim, the postal service accommodated her mental condition by arranging her work hours so she would have no contact with the LOWs. I'm aware, Your Honor, that the federal providers recommended that this when she did not come into contact with her stressors. All right. You're correct, but their recommendation was not binding upon the postal service, and that's why we're here. All right. Mr. Ching. Good morning again, Your Honors. May it please the Court, Assistant United States Attorney Edrick Ching for Defendant John Potter. Your Honor, I think one very important point in this case is when I look at Ms. Paakula's opening brief, when I look at the statement of facts on pages 4 and 5, it brings up the fact that at a certain point in the early 2002, that Ms. Paakula was given information with regard to a potential reassignment which may have put her into contact with Mr. and Mrs. LOW, the fighters, I guess. And then as we go down on page 5, it talks about all the different steps that Ms. Paakula took, and then it just goes down to the fact that a complaint was filed. Your Honor, Mr. Ikei in this case has totally, I'm not sure if it was on purpose or just via mistake, but he totally forgot to include the 2003 OWCP decision which provided in part that Ms. Paakula be transferred to the Sand Island Rehabilitation area of the post office so that she would not have contact with the fighters, Mr. and Mrs. LOW. Your Honor, in the different cases cited by Mr. Ikei, a lot of times without going through each case case-by-case is that a settlement would be made and then the Postal Service would place the plaintiff in a job, and at that point there would be more litigation about whether the accommodation was reasonable and there are disputes. However, in this case, Your Honor, there is no evidence set forth in the record that Ms. Paakula has disputed whether the accommodation was reasonable with regard to her most recent assignment to the Sand Island Rehabilitation Program. And, Your Honor, based on that, it is clear that FECA should preempt Ms. Paakula's Rehabilitation Act claim. What is your understanding of the basis of the present Rehab Act claim? I'm sorry, Your Honor? What's your understanding of the basis of the Rehabilitation Act claim that's pending before this court? What is the basis of it? Oh, the basis is that it is moot because the OWCP made a determination. No, I'm asking you what is the plaintiff asking for? What is the basis for her Rehabilitation Act claim against the Postal Service at this point? Well, thanks for the clarification, Your Honor. You know, when I read the complaint, I don't see her complaining or making any complaints or allegations with regard to her current employment, which was done after 2003, which is at the Sand Island Rehabilitation Act. It appears that she is making allegations with regard to the proposed relocation to the position in which she would have contact with the Laos, which was addressed in the OWCP decision in 2003. So the way the government sees it is that it was already addressed. They gave her an accommodation, and I believe that she was also paid wages with regard to, or she was given monetary consideration. But she wants emotional distress damages and all of the other damages that are not available under FECA. Is that where we are with that case? Yes, that's my understanding of it, Your Honor. But at this point, the government's position is that it is based on, again, I know that was in a previous case, but based on Mr. Viranian, is that FECA preempts the Rehabilitation Act claims. So in your view, if there were an accommodation, and at some point in time, if an employee had an injury that could no longer be accommodated in a particular way, say, for instance, someone lost a limb, and then the situation worsened and they asked for another accommodation, and that accommodation was not made, would that person have a Rehab Act claim, even though the FECA claim had been settled? Your Honor, may I clarify that hypothetical? Would it be the person lost a limb, then received FECA benefits, and then later on, Your Honor? Things worsened, asked for an accommodation, and it wasn't given. No additional FECA proceedings, but asked for an accommodation. Would that earlier FECA proceeding preempt a later Rehab Act claim, in your view? Yes, Your Honor, based on Mr. Viranian, which has facts similar to the hypothetical you gave me, I would argue that the Rehabilitation Act claims are also preempt. So that person would have no remedy if there were a wrongful denial of an accommodation a couple years in the future? FECA would still preempt any Rehab Act claim? Yes, Your Honor, based on Mr. Viranian, I would say yes. She would have more additional FECA remedies, I would assume. Okay, so they would have to reopen the FECA case, in your view, and try to get an adjustment under the FECA, as opposed to under the Rehab Act. That's what you think? Your Honor, I think that, but I'm not really too well-versed. That's a dilemma for me. That's a problem for me. If you say FECA preempts, then I just wonder if a condition worsens over time, and you've already had the FECA procedures, and then the employer does not give accommodation. What is the employee to do? Yes, Your Honor, like we had earlier discussed, perhaps there's additional FECA benefits. And I understand the hypothetical, Your Honor, but at that point, I guess the government, an analysis would have to be done as to the link between the new condition and the old condition. For example, going to the case that Ms. Paakula cited, Reedy v. Viranian, in that case, the plaintiff had a herniated cervical disc, and then, I guess approximately five years later, made a FECA claim on the failure of the plaintiff to receive overtime shifts. And the court found that this claim was not barred or preempted because it claimed that the overtime shifts were not related to the original injury. So at a certain point, I think we would have to do an analysis as to how close the link is between the original injury and then the claim injury. But in this case, Your Honor, the government asserts that there has been no new allegations or complaints with regard to the plaintiff's job, which she received in 2003 at the St. Island Rehabilitation Center. Can you hear me okay? Yes, sir. I think the judge would also be wondering about the issue in this case, and that is whether the FECA preempts claims made under rehabilitation. And I think the clear answer is no. And I think that what we are claiming is not compensation for the injury. We are not claiming that. We are claiming the denial of reasonable compensation made to Ms. Makula as a result of her condition, as a result of her disability. Are you contending that now there is not now a reasonable accommodation? It's spreading time. In fall 2002, she was assigned to work in a position which put her into the same job site as the encounters. She asked for accommodation. It was denied. She subsequently was able to successfully bid for the St. Island Rehabilitation Center in 2003. And that's where she's been. So you're not seeking compensation after the transfer. It's for this period in which she was forced to work in the vicinity of these people. Yes, ma'am. Yes, ma'am. Okay. Thank you, Mr. O'Hara. Your time has expired. We appreciate the argument and the matter just argued will be submitted and the court will stand in recess for the day. This court for this session stands adjourned. Thank you so much, Randy. What's that? Okay, thanks so much, Randy. This is a really difficult acoustic space. It's all marble. It just bounces around in here. It's not ideal. Normally we do video in other courtrooms. Thank you.
judges: Hug, Rymer, Rawlinson